Brian P. Kinder (212332)
THE KINDER LAW GROUP, APC
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
Telephone: (949) 216-3070
Facsimile: (949) 216-3074
Email: bkinder@tklglaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| COBRA ENGINEERING, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>H-D U.S.A., LLC, a Wisconsin limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br>Judge:<br>Dept.:<br><br>COMPLAINT FOR:<br><br>1) DECLARATORY JUDGMENT RE NON-INFRINGEMENT; and<br>2) UNFAIR COMPETITION.<br><br>**DEMAND FOR JURY TRIAL**. |

Plaintiff Cobra Engineering, Inc. ("Cobra" or "Plaintiff") hereby complains and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2201 (declaratory judgment), 15 U.S.C. § 1121 (trademarks), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 28 U.S.C. § 1338 (b) (unfair competition).

2. This Court also has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. §1332(a), in that this is an action between citizens of different states and the amount in controversy exceeds $ 75,000, exclusive of interests and costs.

3. This Court has supplemental jurisdiction over Plaintiff's causes of action for unfair competition and interference with contractual relations under 28 U.S.C. § 1367.

4. Venue is proper in this judicial district because this action arises out of the transaction of business and other activities of Defendants within the Central District of California. Plaintiffs are informed and believe that Defendant regularly conducts and solicits business, engages in other forms of conduct, and derives substantial revenue from doing business in this judicial district. Moreover, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district because, in part, a significant part of Defendants' acts giving rise to the causes of action were directed specifically to Plaintiff who is located in this district. Accordingly, venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2).

## THE PARTIES

5. Plaintiff Cobra Engineering, Inc. is, and at all times relevant hereto was, a corporation organized under the laws of California with a principal place of business in Orange County, California.

6. Plaintiff is informed and believes, and based upon such information and belief alleges that Defendant H-D U.S.A., LLC is, and at all times relevant hereto was, a limited liability company organized under the laws of, authorized to do business in, and doing business in the State of Wisconsin with a principal place of business in the State of Wisconsin.

7. The true names and capacities of Doe Defendants 1 through 10,

inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of this court to amend this complaint to show the true names and capacities of such Doe Defendants when such true names have been ascertained.

8. Plaintiff is informed and believes, and based upon such information and belief alleges, that each of the Defendants named herein as Does 1 through 10, inclusive, were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damage caused by the remaining Defendants, and are therefore jointly and severally liable for the damages caused to Plaintiff.

9. Plaintiff is informed and believes, and based upon such information and belief alleges, that at all times Defendants, and each of them, were the agents, employees and officers of each of the remaining Defendants, and in doing the things alleged, were acting within the scope, course and purpose of such agency or employment, or within the apparent scope of such agency or employment, and with the permission and consent of each of the remaining Defendants.

10. Whenever appearing in this complaint, each and every reference to Defendant, is intended to be and shall be a reference to all Defendants, and to each of them, named and unnamed, including all fictitiously named Defendants.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

11. Cobra is one of the most established aftermarket motorcycle parts companies in the United States. The company was formed and has been in continuous operation since 1977.

12. Cobra sells an entire line of aftermarket motorcycle parts and accessories and is particularly well-known for the company's high quality motorcycle exhaust products ("Cobra Exhaust Products").

13. From the inception of the company forty years ago, Cobra has continuously marketed and sold the Cobra Exhaust Products through the use of

printed promotional materials such as catalogs and flyers. With the popularity of the internet over the last fifteen to twenty years, Cobra has also incorporated electronic promotional materials into the marketing efforts.

14.  Throughout the time that Cobra has continuously promoted the Cobra Exhaust Products, Cobra has always shown images of how the Cobra Exhaust Products will appear when installed on various makes and models of motorcycles. It is necessary to show the entire image of the motorcycle so that the consumer can see a scaled perspective of how the product will appear when installed.

15.  It is a common practice in the aftermarket motorcycle product industry to show the scale of a particular product when promoting sales. Some of the prominent players in the industry that Cobra would consider to be competitors include, among others, the companies trading as Vance & Hines, Rinehart Racing, and Crusher Performance. As shown in the following screen captures from websites corresponding to those companies, the aftermarket motorcycle product industry requires that the entirety of the motorcycle be shown in order to effectively market the products:



Vance & Hines: www.vanceandhines.com



Rinehart Racing: www.rinehartracing.com



Crusher Performance: www.crusherperformance.com

16. Consumers of the aftermarket motorcycle products industry understand that the manufacturers of the foregoing products, including those of Cobra, are separate and unrelated to the underlying manufacturers of the motorcycles themselves.

17. On May 3, 2017, counsel for Defendant H-D U.S.A., LLC ("Harley")



sent Cobra the correspondence attached hereto as *Exhibit A*. As set forth in the correspondence in *Exhibit A*, Harley asserts that Cobra is engaged in "trademark infringement and misleading and deceptive advertising." Harley further asserts in the correspondence in *Exhibit A,* "there is no need for Cobra to use H-D's trademarks or to display Harley-Davidson motorcycles in their entireties to advertise Cobra's products that could be used on Harley-Davidson motorcycles."

18. Further on in the correspondence in *Exhibit A*, Harley asserts that Cobra's use of the 10% off icon displayed below on the left infringes Harley's logo. Although the correspondence in *Exhibit A* does not include a picture of the alleged logo, Cobra understands and believes that the allegation relates to the logo set forth on the right below.

 

19. Finally, and further in the letter in Exhibit A, Harley asserts that Cobra's use of the abbreviation HD to signify that portion of the Cobra website (www.cobrausa.com) pertaining to motorcycle exhaust products for Harley-Davidson motorcycles is an "additional act of trademark infringement."

20. The letter in Exhibit A concludes with demands for compliance with several various activities together with a monetary demand of $150,000.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – Non-Infringement)

21. Plaintiff hereby realleges and incorporates herein by reference the above paragraphs 1 through 20, inclusive, as set forth above.

22. Defendant alleges that Plaintiff's activities infringe Defendant's purported trademark rights. Plaintiff asserts that Plaintiff's activities do not infringe on any rights of Defendant. Accordingly, a case or controversy exists.

23. Plaintiff believes to be entitled to continue engaging in the activities identified as being infringing in connection with the marketing of Plaintiff's goods.

24. Plaintiffs submit that consumers are not likely to be misled, deceived and/or confused by Plaintiff's activities.

25. Plaintiff submits that Defendant's threatened suit for trademark infringement and/or contributory trademark infringement is without basis and seeks a declaration that no likelihood of confusion exists.

26. Defendant's statements and conduct demonstrate that an actual case or controversy exists between the parties. By reason thereof, Plaintiff is entitled to a binding declaration clarifying the parties' rights and declaring that Plaintiff's activities do not infringe any right Defendant may possess.

## SECOND CAUSE OF ACTION
### (Unfair Competition)

27. Plaintiff hereby realleges and incorporates herein by reference the above paragraphs 1 through 26, inclusive, as set forth above.

28. Plaintiff asserts that Defendant has engaged in deceitful, deceptive, unfair, and/or unlawful practices which have caused Plaintiff to suffer actual injury.

29. The foregoing conduct of Defendant constitutes unfair business practices and/or unfair competition under the common law and under California Business and Professions Code section 17200 et. seq.

30. Such acts are "unfair" within the meaning of California Business & Professions Code § 17200 because they offend public policy and are immoral, unethical, oppressive and unscrupulous; and this harm far outweighs any utility of the conduct to Defendant.

31. As a direct and proximate result of the above-described unlawful, fraudulent, unfair, and deceptive acts of Defendant, and the facts herein alleged, Plaintiff has suffered, and will continue to suffer, economic losses in an amount to be proven at trial, but which are in excess of the jurisdictional limits of this court.

32. Plaintiff also seeks to enjoin Defendant from proceeding with the above-described unlawful, fraudulent, unfair, and deceptive conduct.

33. Plaintiff has no adequate remedy at law to protect from Defendant's pervasive unfair, fraudulent and unlawful business practices.

34. Granting injunctive relief will protect Plaintiff. Defendant, by the conduct described herein, has treated Plaintiff and others unfairly and will continue to do so unless enjoined. Defendant, by the conduct described herein, has engaged in unfair, unlawful and fraudulent business practices. Injunctive relief will bar Defendant from future exploitation of Plaintiff and others, and future violations of California law.

35. Plaintiff seeks injunctive relief prohibiting Defendant's continued violation of the above-described unlawful conduct which constitutes an unfair business practice. Pursuant to Section 17203 of California Business and Professions Code, Plaintiff seeks restitutionary relief and/or disgorgement of Defendant's profits, if any, gained through their unlawful and unfair business practices.

**WHEREFORE,** Plaintiff prays for judgment against Defendant, and each of them, to the extent authorized by law, as follows:

1. That Plaintiff's requests for relief be granted;

2. That the court enter judgment against Defendant and in favor of Plaintiff in all respects;

3. For a judicial determination and declaration clarifying the parties' rights and declaring that Plaintiff has not infringed upon any right of Defendant;

4. That this Court enter an Order declaring that Plaintiff's activities do not violate Defendant's rights under the trademark laws of the United States;



1  5. For damages according to proof at trial;
2  6. For injunctive relief as requested herein;
3  7. For costs of suit herein;
4  8. For pre-judgment interest at the legal rate; and
5  9. That this Court award Plaintiffs their attorney's fees, costs, and expenses in this action pursuant to 15 U.S.C. Section 117 or as otherwise provided by law or equity; and
8  10. That this Court grant such other and further relief as it may deem just, equitable and proper.

Respectfully submitted,

Dated: May 11, 2017        THE KINDER LAW GROUP, APC

By: _____
Brian P. Kinder, Esq.
Attorney for Plaintiff

# **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury of all issues triable by jury.

Respectfully submitted,

Dated: May 11, 2017   THE KINDER LAW GROUP, APC

By: _____
　　Brian P. Kinder, Esq.
　　Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12

# **EXHIBIT A**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




www.kelly-ip.com


**David M. Kelly**
(202) 808-3571
david.kelly@kelly-ip.com

May 3, 2017

Tim McCool
President
Cobra Engineering
23801 E. La Palma Avenue
Yorba Linda, CA 92887
tim.mccool@cobrausa.com

**VIA EMAIL AND
OVERNIGHT COURIER**

Re: Infringement of Harley-Davidson's Intellectual Property

Dear Mr. McCool:

We represent Harley-Davidson ("H-D") in trademark, unfair competition, and false advertising matters. We are writing regarding Cobra's "Exhaust Performance 2017" catalog (the "Catalog") and related advertising and promotional materials. H-D was surprised to see the excessive, gratuitous, and prominent use of photographs of Harley-Davidson motorcycles in the Catalog. Cobra's main website at http://www.cobrausa.com (the "Website") displays many of the same photographs of Harley-Davidson motorcycles. Most of the Harley-Davidson motorcycles displayed in the Catalog and on the Website prominently feature the famous and federally registered HARLEY-DAVIDSON trademark. For the few photographs of Harley-Davidson motorcycles that do not bear the HARLEY-DAVIDSON mark, the distinctive designs of those motorcycles make them immediately recognizable as Harley-Davidson motorcycles.

Harley-Davidson, however, has not authorized Cobra to make such use of its trademarks and products. The use of Harley-Davidson motorcycles in the Catalog is so extensive that the 32-page catalog looks like an official Harley-Davidson catalog. At a minimum, the Catalog and the Website are likely to cause persons reviewing the Catalog to mistakenly believe that Cobra is affiliated with Harley-Davidson, that Harley-Davidson endorses Cobra's products, or that Harley-Davidson approves of the use of Cobra exhausts on Harley-Davidson motorcycles, when no such connections or endorsements exist. In short, Cobra is improperly reaping a significant commercial benefit from falsely representing a relationship with H-D when none exists. Cobra's frequent and conspicuous uses of images of Harley-Davidson motorcycles and trademarks thus constitute trademark infringement in violation of Section 32(1) of the Lanham Act (15 U.S.C. §1114(a)), and are also likely to cause confusion, mistake, or deception as to "affiliation, connection, or association" between Cobra and H-D in violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)).

The Court's decision in *Liquid Glass Enterprises, Inc. v. Dr. Ing. h.c.F. Porsche AG,* 8 F. Supp. 2d 398 (D.N.J. 1998), is directly on point here. In that case, Liquid Glass's advertisements for its car polish prominently displayed the PORSCHE

trademark and a Porsche automobile. As shown below, the ad shows LIQUID GLASS car polish being applied to the back of a Porsche 911 car. Porsche sued Liquid Glass for trademark infringement and false designation of origin. Liquid Glass argued that its use of Porsche's trademark and automobile constituted fair use.



The Court rejected Liquid Glass's fair use defense and agreed with Porsche, finding that the ads could mislead the public into believing Porsche endorsed Liquid Glass's products or at least approved of their use on Porsche cars and was not nominative fair use. In particular, Liquid Glass failed to show that its products would not be readily identifiable in the advertisements as Liquid Glass products without use of the Porsche trademarks, i.e., Liquid Glass failed to show that it was *necessary* to use Porsche's trademarks to advertise Liquid Glass's products. The Court stated:

> "While it is certainly true that to advertise a car cleaner or polish, one may wish to demonstrate its use on an automobile, nothing mandates that Liquid Glass use an automobile with a protectable trade dress, or prominently display Porsche's trademarks in the ads. The reason that Liquid Glass chose to use a Porsche, instead of the vast array of other cars, and chose to clearly display the trademark PORSCHE, was not, in this court's opinion, because it needed a mere prop, but because Liquid Glass wanted to usurp Porsche's reputation and strength and persuade consumers that Liquid Glass produces high quality products. Stated somewhat differently, Liquid Glass wanted to cash in on the good will that Porsche has worked hard to create and maintain by aligning itself with Porsche."

*Id.* at 402.

The Court also found that Liquid Glass used more of Porsche's trademarks than was reasonably necessary to make the point that LIQUID GLASS products could be used on automobiles like Porsche's. According to the Court:

> "Nothing at all which this court can see necessitates Liquid Glass's use of the Porsche trademark or trade dress, and even if Liquid Glass were to convince this court that Porsche's distinctive red color was somehow vital to illustrate the shine achieved when using Liquid Glass products, a side panel of the Porsche could have been used without revealing that the car was a Porsche 911."

*Id.* at 403.

The Court thus found that Porsche was likely to prevail in showing that the use of Porsche's trademarks in Liquid Glass's advertisements would likely confuse consumers as to Porsche's connection with Liquid Glass, and granted a preliminary injunction enjoining Liquid Glass from using these ads and from the following, among others:

> a) imitating, copying or making unauthorized use of any of the Porsche trademarks or Porsche trade dress;
>
> b) using any simulation, reproduction, counterfeit, copy or colorable imitation of the Porsche marks or Porsche trade dress in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product, in such fashion as to relate or connect, or tend to relate or connect, such product in any way to Porsche, or to any goods sold, manufactured, sponsored or approved by, or connected with, Porsche;
>
> c) using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that any product manufactured, distributed or sold by Liquid Glass is in any manner associated or connected with Porsche, or is sold, manufactured, licensed, sponsored, approved or authorized by Porsche;
>
> d) transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Liquid Glass's possession, custody or control bearing a design or mark substantially identical to any or all of the Porsche marks or Porsche trade dress;
>
> e) engaging in any other activity constituting unfair competition with Porsche, or constituting an infringement of any or all of the Porsche marks, or of Porsche's rights in, or to use or exploit, any or all of the Porsche marks or Porsche trade dress;

Similarly here, there is no need for Cobra to use H-D's trademarks or to display Harley-Davidson motorcycles in their entireties to advertise Cobra's products that could be used on Harley-Davidson motorcycles. Instead, Cobra could make this same point by simply stating in the text of its promotional materials that its products are made for or fit certain Harley-Davidson motorcycles and/or provide fitment charts matching the Cobra part with the applicable Harley-Davidson motorcycle, both of which it currently does. Nothing more is needed to make this point. At most, as the *Liquid Glass* Court

Tim McCool
Page 4

noted, Cobra could further make this point by showing only the relevant portion of the applicable Harley-Davidson motorcycle and without any H-D trademarks (HARLEY-DAVIDSON or any model trademarks). Indeed, Cobra has already demonstrated that it can make its point by using cut-out pictures to show placement of its products on relevant unbranded portions of Harley-Davidson motorcycles:



Cobra's trademark infringement and misleading and deceptive advertising does not stop at the Catalog and the Website. Cobra engages in additional acts of trademark infringement and further enhances and reinforces the false suggestions of affiliation with and/or endorsement by H-D by operating a website at the domain name COBRAUSA-HD.COM (the "Domain Name"), which is dedicated to selling Cobra's products for Harley-Davidson motorcycles and which uses the same photographs discussed above in the same manner (the "COBRA-HD Website"). Internet users encountering the Domain Name and the corresponding COBRA-HD Website are likely to mistakenly believe that H-D owns the Domain Name and the COBRA-HD Website or that H-D sponsors, endorses, or is otherwise affiliated with the Domain Name and COBRA-HD Website. This likelihood of confusion is heightened by Cobra's use of CobraUSA-HD and Cobra-HD as trade names and trademarks in multiple places on the COBRA-HD Website as shown in the screenshot below. Cobra's registration and use of the Domain Name constitutes trademark infringement, unfair competition, and cybersquatting, and its use of CobraUSA-HD and Cobra-HD constitutes trademark infringement and unfair competition, all with respect to H-D's federally registered H-D and HD trademarks.

Finally, Cobra even uses a bar-and-shield logo, , throughout the Catalog, which infringes H-D's famous and federally registered Bar & Shield Logo and makes the Catalog even more deceptive.

Tim McCool
Page 5



Cobra's false suggestion that H-D endorses Cobra's products is worth hundreds of thousands of dollars. Indeed, the commercial value of H-D's trademarks and reputation is incalculable, and H-D receives tens of millions of dollars in trademark licensing revenue each year for use of its trademarks. Cobra's actions, through which it has obtained the benefit of H-D's reputation without permission or payment, are inexcusable.

Under the Lanham Act, H-D is entitled, among other relief, to recover Cobra's profits and H-D's damages, and a court may increase those amounts up to three times the amount found as actual damages and may also increase the profits. (15 U.S.C. §1117(a)). H-D is also entitled to recover statutory damages of up to $100,000 for cybersquatting. (15 U.S.C. § 1125(d)).

Accordingly, H-D demands written confirmation by no later than **May 10, 2017** that Cobra and all others acting for, on behalf of, or with Cobra will comply with all of the demands set forth below:

1. **Immediately and permanently** remove from the Website and the COBRA-HD Website all photographs of Harley-Davidson motorcycles;

2. **Immediately and permanently** cease distribution, display, and printing of the Catalog and all other promotional and advertising materials displaying photographs of Harley-Davidson motorcycles in all media and forms;

3. **Immediately** transfer to H-D the domain name COBRAUSA-HD.COM and all other domain names you own or control that contain the HD mark or any of H-D's other trademarks or variations thereof, and not register or use in the future any such domain names;

4. **Immediately and permanently** cease and remove all uses of any of H-D's trademarks in any trademarks, business names, trade names, and the like used by Cobra including, but not limited to, "CobraUSA-HD" and "Cobra-HD";

5. **Immediately and permanently** cease and remove all uses of Cobra's bar-and-shield logo shown above;

6. **Immediately and permanently** cease and remove all uses of H-D's trademarks that suggest a relationship, sponsorship, or affiliation with H-D from any medium including, but not limited to, all websites you own, operate or control, indoor and outdoor signs, print materials, products, promotional and advertising materials, and third-party websites including social media pages (e.g., Instagram, Twitter, YouTube, Facebook);

7. **Immediately and permanently** cease representing to third parties, directly or indirectly, in any manner or form, that Cobra is affiliated with or licensed, sponsored, approved, or authorized by H-D including, but not limited to, the ways described in this letter; **and**

8. **Immediately** pay to H-D the sum of $150,000.

H-D considers Cobra's actions to usurp H-D's trademarks and endorsement to be very serious violations of H-D's rights. If Cobra does not agree to these terms, H-D will take whatever action it deems necessary to protect its valuable intellectual property rights and reserves all rights and remedies.

Sincerely,

*/s/ David M. Kelly/*

David M. Kelly

DMK
cc: H-D