UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| COBRA ENGINEERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> H-D U.S.A., LLC; HARLEY-DAVIDSON, INC.; and DOES 1–10, <br><br> Defendants. | Case No.: SACV 17-00840-CJC(KESx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER, AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |

## I. INTRODUCTION

On May 11, 2017, Plaintiff Cobra Engineering, Inc. filed this action against Defendant H-D U.S.A., LLC ("HDUSA"). (Dkt. 1.) On June 19, 2017, Plaintiff filed a First Amended Complaint ("FAC") against Defendants HDUSA and Harley-Davidson,

Inc. ("Harley") alleging two causes of action for declaratory judgment regarding patent non-infringement and unfair competition. (Dkt. 13 [hereinafter, "FAC"].) Before the Court is Defendants' renewed motion to dismiss and motion to transfer the case to the Eastern District of Wisconsin, (Dkt. 33-4 [hereinafter, "Mot."]), and Plaintiff's motion for leave to file a Second Amended Complaint, (Dkt. 34-1). For the following reasons, the Defendants' motion to transfer is GRANTED, their motion to dismiss is DENIED, and Plaintiff's motion is DENIED.[1]

## II. BACKGROUND

Plaintiff Cobra Engineering, Inc., is a corporation organized under the laws of California and maintains its principal place of business in Orange County, California. (FAC ¶ 5.) Plaintiff is an aftermarket motorcycle parts company that sells a line of motorcycle exhaust products. (*Id.* ¶¶ 18–19.) Plaintiff markets its exhaust products through printed and electronic promotional materials, which include images of how the exhaust products will appear when installed on various motorcycles. (*Id.* ¶¶ 20–21.) Plaintiff alleges that it is a "common practice" in this industry to show "the entirety of the motorcycle . . . in order to effectively market the products." (*Id.* ¶ 22.)

Defendant Harley is a corporation organized under the laws of Wisconsin and maintains its principal place of business in Wisconsin. (*Id.* ¶ 7.) Harley is the parent company of HDUSA. (*Id.* ¶ 8.) Neither Harley nor any of its subsidiaries are incorporated in California, maintain a principal place of business in California, or conduct corporate board meetings in California. (Mot. at 3; Dkt. 33-1 [Declaration of Jonathan Keyser, hereinafter "Keyser Decl."] ¶¶ 22, 27.) Harley has no corporate offices,

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 22, 2018, at 1:30 p.m. is hereby vacated and off calendar.

business mailing address, employees, bank accounts, telephone numbers, or other corporate activity in California. (Keyser Decl. ¶ 21.) More than 98% of Harley's 5,710 employees in the United States are located in seven states where Harley has an office or facilities. (*Id.* ¶ 24.) Harley, through its related companies, distributes motorcycles and related products to a network of independent dealers throughout the United States, (*id.* ¶ 20), and Harley is registered to do business domestically in many states, including California, (*id.*). Only 7.3% of Harley dealerships are located in California, (*id.* ¶ 25), and only 9.7% of Harley motorcycles were sold in California in 2016, (*id.* ¶ 26).

Defendant HDUSA is a limited liability company organized under the laws of Wisconsin and maintains its principal place of business in Wisconsin. (FAC ¶ 6.) HDUSA is an intellectual property holding company that owns, amongst other things, the Harley-Davidson trademark and the Harley-Davidson logo ("the Harley IP"). (*Id.* ¶ 8; Keyser Decl. ¶ 5.) HDUSA has no employees, office, agent for receipt of process, bank accounts, land, property, telephone listings, or mailing addresses in California, nor does HDUSA file tax returns in California. (Keyser Decl. ¶¶ 9–18.)

Defendants use the Harley IP in their business and license the Harley IP to other Harley-Davidson companies for use in manufacturing and selling motorcycles. (FAC ¶¶ 9–10.) HDUSA also licenses the Harley IP to Harley-Davidson companies for use in the making and selling of replacement and aftermarket motorcycle parts and accessories. (*Id.* ¶ 10; Keyser Decl. ¶¶ 5–6.) HDUSA's trademark license agreements with authorized Harley-Davidson dealers in California and elsewhere are not exclusive licenses, and the license agreements to not give authorized dealers the right to enforce HDUSA's trademark rights. (Keyser Decl. ¶ 6.) Plaintiff alleges that Defendants license the Harley IP to licensees in California and "derive substantial revenues therefrom." (FAC ¶ 11.) Defendants and their related entities have filed lawsuits in California to enforce and/or defend their intellectual property rights. (*Id.* ¶¶ 11–13.)

1  In 2017, Plaintiff published a 32-page catalog titled "Exhaust Performance 2017" ("the Catalog") that used more than 65 photos of Harley-Davidson motorcycles and prominently displayed Defendants' trademarks. (FAC Ex. A at 1.) Plaintiff uses many of the same photographs on its website, (*id*.), uses the domain name COBRAUSA-HD.COM, as well as uses "Cobra USA-HD" and "Cobra-HD" as trade names/trademarks on its website, (*id*. at 1, 4). Plaintiff also used Defendants' bar-and-shield logo in the Catalog. (*Id*.)

On May 3, 2017, HDUSA's counsel sent Plaintiff a cease-and-desist letter "regarding Cobra's 'Exhaust Performance 2017' catalog (the 'Catalog') and related advertising and promotional materials." (FAC Ex. A [Letter] at 1.) HDUSA described Plaintiff's "use of photographs of Harley-Davidson motorcycles in the Catalog" as "excessive, gratuitous, and prominent," noting that Cobra's main website displays many of the same photographs." (*Id*.) The Letter also described other trademark infringement of Defendants' logos. (*Id*. at 4–5.) The Letter stated that Plaintiff was not authorized "to make such use of its trademarks and products" and that such use "constitute[s] trademark infringement" in violation of the Lanham Act. (*Id*.) HDUSA demanded "written confirmation by no later than May 10, 2017 that Cobra . . . will comply with all of the demands set forth" in the Letter. (*Id*. at 5.) These demands included (1) "[i]mmediately and permanently remove from the Website and the COBRA-HD Website all photographs of Harley-Davidson motorcycles" and (2) "[i]mmediately and permanently cease distribution, display, and printing of the Catalog and all other promotional and advertising materials displaying photographs of Harley-Davidson motorcycles in all media and forms." (*Id*. at 5–6.) The Letter concluded that "[i]f Cobra does not agree to these terms, H-D will take whatever action it deems necessary to protect its valuable intellectual property rights and reserves all rights and remedies." (*Id*. at 6.)

//

On May 9, 2017, Plaintiff's counsel emailed HDUSA's counsel, acknowledged receipt of the Letter, and stated that he anticipated completing review and a written response to the Letter by the middle of the following week. (*Id*. ¶ 29; Dkt. 33-2 [Declaration of David M. Kelly, hereinafter "Kelly Decl."] ¶ 5, Ex. 1 at 2–3.) Plaintiff's counsel specifically stated, "I am presently setting up a time to visit my client at their office and review this matter. I hope to do so by the end of this week and anticipate having a response to you by no later than the middle of next week." (Kelly Decl. Ex. 1 at 2.) HDUSA's counsel replied on May 10, 2017, and reiterated that Defendants were concerned about "Cobra's extensive appropriation of H-D's intellectual property" and that Defendants "requested and expected a substantive response by today." (*Id*.) HDUSA's reply also stated that Plaintiff's "non-substantive response and vague references of what you 'hope' or 'anticipate' to accomplish, coupled with the apparent inability of Cobra to have meaningful telephone or email communications about this serious matter, does nothing to alleviate H-D's concerns and only increases them." (*Id*.) Plaintiff understood HDUSA's reply "to be a second cease-and-desist letter and demand by Harley." (*Id*.)

On May 11, 2017, Plaintiff filed this action against HDUSA for declaratory relief and for unfair competition. (Dkt. 1.) On June 19, 2017, Plaintiff filed a FAC against HDUSA and Harley. (FAC.) On August 4, 2017, Defendants filed a motion to dismiss the FAC for lack of personal jurisdiction, motion to transfer the case to Wisconsin, or in the alternative to dismiss for failure to state a claim under Rule 12(b)(6). (Dkt. 27.) On September 7, 2017, the Court denied Defendants' motion without prejudice and ordered 90 days of jurisdictional discovery on the issue of general jurisdiction. (Dkt. 30.) During the 90 day period for jurisdictional discovery, Plaintiff did not engage in any discovery with Defendants whatsoever. (Dkt. 33-3 [Declaration of Jason M. Joyal, hereinafter

"Joyal Decl."] ¶ 7.)[2]  Defendants have now renewed their motion to dismiss and motion to transfer.

## III. DISCUSSION

Federal courts may only decide cases over which they have statutory jurisdiction and where the exercise of jurisdiction comports with due process. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). A plaintiff has the burden of establishing that personal jurisdiction exists over a defendant. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003). A court may rule on a defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) without first holding an evidentiary hearing. *Id.* at 1129. In the absence of an evidentiary hearing, the plaintiff has the burden of making a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Id.* at 1129. When the plaintiff's version of the facts is not directly controverted, it is taken as true for the purposes of a Rule 12(b)(2) motion. *Id.* at 1129. Conflicts between the facts in the parties' affidavits are resolved in the plaintiff's favor. *Id.*

Where, as is here, the subject matter jurisdiction is based on diversity, the district court applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). California's long-arm statute provides that "[a] court of this state may

---

[2] Indeed, Plaintiff represented to Defendants at the Local Rule 7-3 conference for this motion that it would no longer pursue a theory of general jurisdiction to support the Court's exercise of jurisdiction over Defendants in this case. (*Id.* ¶ 8.) Defendants and Plaintiff dispute whether Plaintiff conceded that the Court lacks general jurisdiction over Defendants at this conference. In Plaintiff's opposition to the Defendants' renewed motion to dismiss, Plaintiff argues that the Court has personal jurisdiction over Defendants under both the theory of general jurisdiction and specific jurisdiction. (Dkt. 36 [Plaintiff's Opposition, hereinafter "Opp."] at 13–14.)

exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Thus, the jurisdictional analysis under California law and federal due process is the same. *Yahoo! Inc.*, 433 F.3d at 1205.

Constitutional due process is satisfied when a nonresident defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. *Id.* at 922.

**A. General Jurisdiction**

A "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). When there is general jurisdiction, any cause of action arising from an entity's dealings, regardless of whether the dealings upon which the cause of action rests are tied to the forum state, may be heard in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (describing general jurisdiction as a situation where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities") (quoting *Int'l* Shoe, 326 U.S. at 318). However, it is the "exceptional case" when "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n. 19.

Defendants are not subject to general jurisdiction in California. Contrary to Plaintiff's argument, (Opp. at 14), the fact that Harley is registered to do business with the California Secretary of State and has appointed an agent for service of process in California does not establish general jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court*, 1 Cal. 5th 783, 798 (Cal. 2016), *rev'd on other grounds sub nom. Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017).

Although Plaintiff alleges that Defendants' commercial activity in California establishes general jurisdiction, (FAC ¶ 4), Defendants' contacts with California do not come close to approximating physical presence or rendering it at home in California. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); *Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). Indeed, Plaintiff does not oppose Defendants' argument that their commercial activity does not establish general jurisdiction in its opposition. (*See generally* Opp.) A corporation incorporated outside of California and with its principal place of business outside of California that has no employees, offices, mailing address, or corporate activity in California is not at home in California. *See Daimler*, 134 S. Ct. at 761. While Defendants operate in California through their affiliates and subsidiaries, who in turn sell motorcycles and related products through independent third-party dealers in many states, (Mot. at 11), the presence of a third-party dealer alone does not subject a corporation to general jurisdiction. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, at 762 n. 20. Exercising general jurisdiction here would both render Defendants subject to general jurisdiction throughout the country and expand this Court's jurisdiction beyond constitutional limits. *See id.* at 761–62 ("Such exorbitant exercises of all-purpose jurisdiction [by finding it wherever a corporation engages in substantial, continuous, and

systematic course of business] would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).[3]

Plaintiff also claims that Defendants have admitted to general jurisdiction in California through their filing lawsuits to enforce or defend their intellectual property rights in the State. (Opp. at 13–14; FAC ¶¶ 11–13). "However, a party may only impliedly consent to jurisdiction by bringing a separate action based on the same transaction or arising out of the same nucleus of operative facts." *Clinton v. Boladian*, No. CV 11-10062-R, 2013 WL 12126107, at *1 (C.D. Cal. May 2, 2013) (citing *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 837 (9th Cir. 2005)). In *Dow Chem. Co.*, the Ninth Circuit held that the defendants "did not consent to jurisdiction in this action by waiving their personal jurisdiction objection in [a prior] declaratory judgment action," *Dow Chem. Co.*, 422 F.3d at 836, and held generally that "defense on the merits in a suit brought by one party cannot constitute consent to suit as a defendant brought by different parties," *id*. at 835. Here, Defendants' prior litigation in California involved three cases where another party, not Plaintiff, brought an action against Harley and Harley asserted a counterclaim regarding its trademarks. (Joyal Decl. ¶ 5.) Defendants have not brought an action for trademark violations in any district court in California since 1998[4], (*id*. ¶ 4),

---

[3] Defendants also provide evidence that 7.3% of Harley dealerships are located in California, (Keyser Decl. ¶ 25), and only 9.7% of Harley motorcycles were sold in California in 2016, (*id*. ¶ 26). Other states, such as Florida and Texas, had comparable sales numbers–9.2% and 8.9% respectively. (*Id*.)

[4] Plaintiff argues that the Court should not disregard Defendants' previous enforcement actions in California in light of *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1097 (N.D. Cal. 2013). *ActiveVideo* is inapposite to this case. There, the district court held that the defendant's argument that it had shifted its enforcement away from the Northern District of California "lack[ed] merit" because the defendant had initiated six patent infringement lawsuits in *that* district up until January 2013, the year the action at issue commenced. *Id*. at 1097–98. Defendants' last enforcement action for trademark violations was commenced in 1998 and ended in 2000, making Defendants' argument that this "contact" with California is not relevant due to the passage of time credible. (Mot. at 14–15.)

and Plaintiff was not a party to any of those actions, (*id*. ¶ 6). Plaintiff does not contest that none of Defendants' lawsuits involved Plaintiff's Catalog or Plaintiff's use of the Harley IP. (Mot. at 13; Opp. at 13–14.) Because Plaintiff was not a party to any of Defendants' prior lawsuits in California, and none of these lawsuits involved the same transaction or occurrence as the present action, Defendants have not consented to jurisdiction in this action through previous litigation in California.[5] Indeed, "[g]eneral jurisdiction is not forever established over Defendants solely because of their admissions in a prior unrelated case, particularly when these admissions did not previously result in an explicit finding of general jurisdiction." *L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*, No. CV 16-9325-RSWL-KSX, 2017 WL 1535084, at *5 (C.D. Cal. Apr. 27, 2017) (citation omitted).

### B. Specific Jurisdiction

Specific jurisdiction, in contrast, "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation . . .. [S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (citations omitted). Specific jurisdiction comports with due process only if the non-resident defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Doe*, 248 F.3d at 923

---

[5] Plaintiff argues that Defendants' predecessor, H-D Michigan, Inc., consented to general jurisdiction in *The McGraw Company et al v. H-D Michigan, LLC*, 10-cv-00539-JSW (N.D. Cal. Feb. 5, 2010), where H-D Michigan, Inc. admitted that it was subject to general jurisdiction in California and filed a compulsory counterclaim for trademark infringement. (Opp. at 13.) This action ended in a stipulated dismissal with prejudice without any explicit finding of general jurisdiction. (Mot. at 4 [citing Case No. 10-0539 Dkt. 37].) Like the defendants in *Dow Chem. Co.*, Defendants have not consented to jurisdiction in this action based on their failure to contest jurisdiction in a previous declaratory judgment action where their predecessor was hauled into court as a defendant.

Case 2:18-cv-00071-JPS   Filed 01/11/18   Page 10 of 17   Document 40

-10-

(quoting *Int'l Shoe*, 326 U.S. at 316). The inquiry "'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The plaintiff "cannot be the only link between the defendant and the forum." *Id.* at 1122.

The Ninth Circuit "employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger*, 374 F.3d at 802). The prongs are: (1) the non-resident defendant must purposefully avail himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Id.* The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If a plaintiff successfully does so, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780 F.3d at 1212.

The "exact form" of the jurisdictional inquiry depends on the nature of the claim at issue. *Id.* The claims at issue in this case sound in tort. *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 720 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en banc*, No. 03-35188, 2004 WL 2376507 (9th Cir. 2004) ("[T]rademark infringement generally sounds in tort."); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) *holding modified by Yahoo! Inc.*, 433 F.3d 1199 (same). Therefore, the Court applies a "purposeful direction" test and looks to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. *Picot*, 780 F.3d at 1212.

To establish that Defendants purposefully directed their activities at California, Plaintiff must demonstrate that Defendants "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1214. Plaintiff argues that HDUSA's cease-and-desist letter provides a sufficient basis for jurisdiction. (Opp. at 14–18.)[6] Defendants argue that this contact alone is not sufficient to establish specific jurisdiction. (Mot. at 16–19.) The Court agrees.

"A cease-and-desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc.*, 433 F.3d at 1208 (citing *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)[7]). "There are strong policy reasons to encourage cease-and-desist letters," including to "warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation." *Id*. "If the price of sending a cease-and-desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter." *Id*. In *Yahoo! Inc.*, the Ninth Circuit held that a "normal cease-and-desist letter" that stated the defendant would shortly file suit if the plaintiff did not comply with the defendant's demands "was not abusive, tortious or

---

[6] Plaintiff alleges in the FAC that Plaintiff understood HDUSA's counsel's reply email on May 10, 2017, "to be a second cease and desist letter and demand by Harley." (FAC ¶ 30.) This reply email was plainly a response to Plaintiff's counsel's email on May 10, 2017, rather than a separate cease and desist letter. Moreover, while Defendants address this allegation in their motion, (Mot. at 16 n. 6), Plaintiff does not address this factual allegation in its opposition, (*see generally* Opp.). Plaintiff's arguments on specific jurisdiction consistently refer to a single cease and desist letter. (*Id*.)

[7] Plaintiff urges the Court to apply the "mirror-image analysis" used in *Red Wing*, asserting that "[a]ll of the cases cited by Harley in the Motion build upon the jurisprudence of *Red Wing* . . .." (Opp. at 11.) In *Red Wing*, the Federal Circuit came to the same conclusion as the Ninth Circuit, holding that "without more, such letters are not sufficient to satisfy the requirements of Due Process in declaratory judgment actions." *Red Wing Shoe Co.*, 148 F.3d at 1360. The Federal Circuit only discussed the "mirror-image" analysis as a flawed rationale holding that a cease-and-desist letter was a sufficient basis for specific jurisdiction. *Id*.

otherwise wrongful" and thus did not provide a basis for personal jurisdiction. *Id.*; *see also Cohen v. iScrap App Inc.*, No. EDCV1200942VAPOPX, 2012 WL 12893793, at *1 (C.D. Cal. Dec. 5, 2012) (holding that a copyright cease-and-desist letter from a non-resident defendant was insufficient to establish personal jurisdiction in a declaratory judgment action for copyright non-infringement).[8]

However, in conjunction with other contacts, a cease-and-desist letter can form the basis for specific jurisdiction. In *Bancroft*, the Ninth Circuit upheld jurisdiction based on two letters sent by the defendant in bad-faith and designed to interfere wrongfully with the plaintiff's business. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The first letter was sent to Virginia to the registrar of the plaintiff's domain name, and the second was sent to the plaintiff's corporate offices in California. *Id.* at 1085. The Ninth Circuit held that because the defendant specifically targeted the plaintiff, a California corporation doing business almost exclusively within that state, and because the defendant knew that the effects of the letters would be felt in California, the purposeful availment prong was satisfied. *Id.* at 1085–89. The court specifically noted that the case arose "principally out of [the defendant's] letter to [the registrar of the plaintiff's domain name], and that letter did more than warn or threaten [the plaintiff]," as the letter to the registrar triggered the registrar's dispute resolution procedures with the plaintiff. *Id.* at 1089; *see also Attilio Giusti Leombruni S.p.A. v. Lsil & Co.*, No. CV15002128BROEX, 2015 WL 12743878, at *8 (C.D. Cal. May 29, 2015) (holding that a cease-and-desist letter sent by the defendant to the plaintiff and two demand letters sent by the defendant to two retailers who carried the plaintiff's allegedly infringing product were "intentional acts" under the first prong of purposeful availment).

---

[8] Plaintiff's citation to *Dolco Packaging Corp. v. Creative Indus., Inc.*, No. 86-3078 WMB (BX), 1986 WL 84366, at *2 (C.D. Cal. Oct. 10, 1986), where the district court found it had jurisdiction over the defendant based on a single cease-and-desist letter, is unpersuasive in light of later, binding precedent in *Yahoo! Inc.* (Opp. at 14 n. 14). Similarly, the other cases Plaintiff cites to support the exercise of jurisdiction involved cases where the defendant had sent a cease and desist letter as well as initiated another contact with the forum. (*Id.*) These cases are inapposite to the facts presented here.

Contrary to Plaintiff's argument, HDUSA's cease-and-desist letter was not a "sham" letter sent "for the wrongful purpose of advancing an agenda of unfair competition." (Opp. at 15.) Like the cease-and-desist letter in *Yahoo! Inc.*, the Letter "simply alerted [Plaintiff] to [HDUSA's] view of [the applicable] law and stated its intent to file suit [] to enforce that law against [Plaintiff]." *Yahoo! Inc.*, 433 F.3d at 1209. Plaintiff argues that the Letter was "objectively baseless" because Harley knew there was "no factual or legal basis" for Harley to require Plaintiff to remove all photographs of Harley-Davidson motorcycles from Plaintiff's website and promotional and advertising materials. (Opp. at 2, 5.)[9] Defendants argue that the Letter is well-grounded in their right to enforce their intellectual property rights and clearly focuses on Plaintiff's Catalog and its uses of the Harley IP, even though the two demands Plaintiff points out are broadly worded. (Dkt. 37 [Defendants' Reply] at 6–7.)[10] The Letter explains HDUSA's contentions, cites and analyzes applicable law, and provides examples of images of Harley-Davidson motorcycles that Harley thought were permissible for use in Plaintiff's advertising. (*See generally* Letter.) Simply put, Plaintiff disputes the merits of Defendants' legal arguments, but this dispute does not render the Letter a "sham." Plaintiff has pointed to no evidence, such as in *Bancroft*, that the Letter was intended to do more than warn Plaintiff of what Defendants believed was infringing activity and threaten legal action.

---

[9] Plaintiff argues that the Court must take Plaintiff's allegation that the Letter was a "sham" as true under the standard for analyzing personal jurisdiction on a motion to dismiss. (Opp. at 16–17.) However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] Plaintiff points out that Defendants' counsel recently represented that Defendants' position "is not that aftermarket parts providers can never use any photographs of H-D motorcycles or any of H-D's marks, but rather H-D objected here to Cobra's excessive, gratuitous use of such marks and full images of H-D motorcycles in the catalog at issue." (Opp. at 8; Dkt. 34-2 ¶ 14, Ex. H.) Plaintiff argues that this statement is "an unequivocal admission that the cease and desist letter that Harley sent to Cobra was frivolous and in violation of the Rules of Professional Conduct." (Opp. at 8.) This argument is a nonstarter. Defendants' recent statement reflect the content of the Letter and is consistent with their arguments in their briefing. This statement is not some new, contradictory interpretation of the Letter.

Defendants' conduct has not satisfied the purposeful availment prong because Defendants have not engaged in "wrongful conduct." Nothing in the Letter operated to wrongfully interfere with or misappropriate any of Plaintiff's property. "Therefore, the cease-and-desist letter[] in this case represent[s] precisely the sort of 'foreign act[s] with foreseeable effects in the forum state' which the Ninth Circuit in *Bancroft & Masters* held to be insufficient to establish purposeful availment absent 'something more' such as intentional and wrongful or tortious conduct." *Bandai Am. Inc. v. Brown*, No. CIV 00-13364 WMB, 2002 WL 31417189, at *4 (C.D. Cal. June 1, 2002).[11]

**C. Motion to Transfer**

Defendants have requested that if the Court finds it lacks jurisdiction over them, that the Court should dismiss or transfer the case to the United States District Court for the Eastern District of Wisconsin, which is the District where the Defendants reside. (Mot. at 19.) Plaintiff does not oppose or even address the request to transfer the case in its opposition. (*See generally* Opp.) If a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631. "In general, this circuit has taken a broad view of when transfer is appropriate, recognizing that 'normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.'" *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (quoting *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (internal quotations and citation omitted))). "[T]ransfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or

---

[11] As the Court finds it lacks jurisdiction over Defendants, it is unnecessary to address the parties arguments concerning whether Plaintiff has failed to state a claim for unfair competition. (Mot. at 19–25.)

was filed in bad faith." *Id*.

In the interest of justice, and because Plaintiff has not opposed transfer, rather than dismissing this action, the Court transfers it to the United States District Court for the Eastern District of Wisconsin, the district in which Defendants reside and in which the cease-and-desist letter originated. *See Cohen*, 2012 WL 12893793 at *5 (ordering a § 1631 transfer to the defendant's state of residence in a declaratory judgment action for trademark non-infringement that arose out of a single cease-and-desist letter).

**D. Plaintiff's Motion for leave to file a Second Amended Complaint**

Plaintiff argues that it should be allowed to amend the FAC to include "allegations of specific limited jurisdiction," (Dkt. 34-2 at 3), namely Plaintiff's arguments that Defendants' letter was a "sham and frivolous" cease-and-desist letter, (Dkt. 34-5 ¶¶ 18–20). Plaintiff attaches the proposed SAC to its motion. (Dkt. 34-5.) Defendants argue that amendment would be futile based on the jurisdictional arguments made in its briefing on the motion to dismiss. (Dkt. 35 at 6–7.) Plaintiff does not contest, or even address, whether amendment would be futile in its reply. (*See generally* Dkt. 38.)

Leave to amend must be freely granted, Fed. R. Civ. P. 15(a), and that policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The burden of persuading the Court that leave should not be granted rests with the non-moving party. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186–87 (9th Cir. 1987). "[F]utile amendments should not be permitted." *Id.* at 188 (citation and quotation omitted). An amendment is "futile" only if it would clearly be subject to dismissal. *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) (citing *DCD Programs, Ltd.*, 833 F.2d at 188). Because the Court has found that it lacks personal jurisdiction over Defendants based on Plaintiff's theory that

the cease-and-desist letter provides a sufficient basis for specific jurisdiction, Plaintiff's proposed amendments regarding those facts is futile. *Plumeau v. School District #40, County of Yamhill*, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is GRANTED and Defendants' motion to dismiss is DENIED as moot. The Court hereby TRANSFERS this case to the U.S. District Court for the Eastern District of Wisconsin. Plaintiff's motion for leave to file a Second Amended Complaint is DENIED.

DATED: January 11, 2018

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE